520 A.2d 551

Lester H. Zimmerman, Jr., Appellant *v.* Betty S. Carter et al., Appellees.

Argued September 10, 1985, before Judges ROGERS, PALLADINO and BLATT, sitting as a panel of three. Reargued September 10, 1986, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Randall E. Zimmerman, Barron & Zimmerman,* for appellant.

*Clyde R. Bomgardner,* with him, *Andrew L. Winder,* for appellees.

OPINION BY JUDGE MACPHAIL, January 30, 1987:

Lester H. Zimmerman, Jr. (Appellant) has brought this appeal from an order of the Court of Common Pleas of Juniata County which dismissed his exceptions to an order directing Appellant to transfer ownership and control of certain funds to the Treasurer and Commissioners of Juniata County (Appellees). The court also dismissed Appellant's counterclaim.

Appellant served as District Attorney for Juniata County for a four-year term beginning in January, 1976. On September 30, 1975, his predecessor had entered into a Cooperative Agreement with the Department of Public Welfare (DPW) which provided for reimbursement for costs incurred by the District Attorney in prosecuting certain paternity and child support cases. The federal government provided the funding for these reimbursements pursuant to Title IV-D of the Social Security Act, 42 U.S.C. §§651-667.[1]

---

[1] On October 1, 1975, the County Commissioners and the President Judge of the Juniata County Court of Common Pleas entered into a similar agreement with DPW to benefit the County domestic relations office.

During his term as District Attorney, Appellant applied for and received periodic reimbursements from DPW totalling approximately $28,000. At first, Appellant routinely endorsed the checks received by him from DPW over to the County. Appellant became increasingly concerned, however, that the County was not utilizing the funds in accord with the terms of the Cooperative Agreement which provided, in pertinent part, that:

> The reimbursement payments . . . are to be earmarked for the purpose of strengthening the mission of the District Attorney in the prosecution of paternity cases and cases to obtain and enforce child support orders and are not to be used for any other purpose, nor shall any appropriation made for the operation of the District Attorney's office be reduced by reason of payments made under this Agreement.

Apparently based on Appellant's concern that he could be held liable for any improper use of the Title IV-D funds, Appellant ceased endorsing the funds over to the County during 1979 and instead deposited them in a separate trust account.

Appellees subsequently filed an action in mandamus seeking to have the funds which had been withheld by Appellant transferred to the County treasury. Appellant filed an answer in which he included a counterclaim asserting his entitlement to the funds which had already been transferred to the County but which Appellant alleges were disbursed in violation of the Cooperative Agreement. Following a bench trial, the Appellees' request for mandamus relief was granted and the counterclaim dismissed.

The issues raised on appeal generally involve the question of whether the District Attorney or the County is entitled to control over the disbursement of the

subject Title IV-D funds. We observe that mandamus relief may be properly granted only where there exists a clear legal right in the petitioner, a corresponding duty in the respondent and an absence of any other appropriate or adequate remedy. *Equitable Gas Co. v. City of Pittsburgh,* 507 Pa. 53, 488 A.2d 270 (1985). We also note that counterclaims are not generally permitted in mandamus actions. Pa. R.C.P. No. 1096. We agree with the trial judge, however, that due to Appellees' failure to properly object to the counterclaim, any right of objection may be considered to have been waived. Given the extended duration of the instant litigation, now in excess of seven years, and the parties' demonstrated inability to reach a negotiated settlement despite this Court's urgings, we will accordingly endeavor to finally resolve this dispute.[2]

We first address the Appellees' right to have the Title IV-D funds retained by Appellant transferred to the County treasury. We think the County's right to possession of the disputed monies is made clear by Section 1609 of The County Code (Code),[3] 16 P.S. §1609, which provides pertinently as follows:

> [T]he salaries fixed and provided by law for county officers' shall be in lieu of all or any moneys, fees, perquisites, or mileage expenses, and other allowances received or allowed to any such officer, and *all such moneys, fees,* perquisites, or mileage expenses, *and other allowances . . .*

---

[2] We note that Appellant has filed a post-submission application requesting this Court to amend the instant action to one in equity in order to effect a complete resolution of the case. While we do not view such an amendment to the form of action to be proper at this juncture, we recognize that judicial economy would be served by a prompt and final resolution of this matter.

[3] Act of August 9, 1955, P.L. 323, *as amended.*

*shall belong to the county and shall be paid into*
*the county treasury. . . .* (Emphasis added.)
*See also* Section 1608 of the Code, 16 P.S. §1608 (directing that all fees and emoluments accruing to county officers by virtue of public office be paid to the county treasurer). Appellant has pointed to no other legal provisions which would permit him to bypass the County treasury and personally retain the funds for disbursement. Nor do we think that such a practice would further the valid legislative goals implicit in the Code of maintaining the integrity of the County fisc. The District Attorney is an elected county officer[4] and any grants or allowances received by him by virtue of his office must be considered funds obtained on behalf of the County and payable to the County treasury in accord with Section 1609 of the Code. We note additionally that the official vouchers by which the District Attorney requested DPW payments refer to the District Attorney as an agency of Juniata County and certify that "this office" had incurred the vouched expenses. We, accordingly, conclude that Appellees have established a clear right to have all Title IV-D funds transferred to the County treasury and a corresponding duty on the part of Appellant to effect the transfer.

The result does not mean, however, that the Appellees are free to use the funds without regard to the terms of the Cooperative Agreement. We observe that the County Commissioners were aware of Appellant's application for reimbursement from DPW, assisted in the application procedure by providing prior expense figures for the District Attorney's office, and, in fact, had entered into a similar agreement providing for reimbursement to the County domestic relations office. Thus, although the County is entitled to possession of

---

[4] Section 401(a)(11) of the Code, 16 P.S. §401(a)(11).

the Title IV-D funds, we also believe that the County is obligated to use the funds obtained on its behalf in accord with the Cooperative Agreement. The funds should be earmarked for the purposes set forth in the Cooperative Agreement and disbursed for expenses properly incurred by the District Attorney in furthering those purposes.

Unfortunately, the record developed at trial is not adequate to render a decision as to which expenses of the District Attorney have been or should be reimbursed by the County. Appellant testified at trial that he incurred considerable personal expenses in expanding the District Attorney's office for the purposes set forth in the Cooperative Agreement and that he is entitled to be reimbursed for those expenses. The County argues, however, that Appellant never formally requested reimbursement from the County over and above the annual amount budgeted for his office. Moreover, it appears that Appellant hired and paid a secretary and assistant district attorney without County salary board approval based on Appellant's belief that the Cooperative Agreement warranted such individual hiring action.[5]

While not condoning these errors in complying with applicable County procedures, the fact remains that Appellant was the vehicle by which the County received substantial sums of money from DPW to further the effectiveness of the District Attorney in prosecuting paternity and child support cases. It is also clear that Appellant did expand the District Attorney's operations in

---

[5] Having decided that the Title IV-D funds must be considered County funds under Section 1609 of the Code, we must also conclude that any staff to be hired and paid using those funds were subject to salary board approval. *See* Sections 1420, 1623 of the Code, 16 P.S. §§1420, 1623; *Simon v. Del Vitto,* 43 Pa. Commonwealth Ct. 402, 403 A.2d 1335 (1979).

those areas with the expectation that he would be reimbursed. We conclude that Appellant is entitled to reimbursement from any remaining Title IV-D funds and the interest which has accrued thereon, for expenses which he can establish were incurred in furthering the goals set forth in the Cooperative Agreement during his term in office.

We, accordingly, will order that Appellant transfer the Title IV-D funds withheld plus any interest which has accrued thereon to the County treasury and we will remand to the trial court for a determination of any reimbursable expenses to which Appellant may be entitled.

## ORDER

The order of the Court of Common Pleas of Juniata County in the above-captioned matter is affirmed insofar as it granted mandamus relief to Betty S. Carter, et al. The matter is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

DISSENTING OPINION BY JUDGE PALLADINO:

I respectfully dissent from the majority's conclusion that mandamus lies as a proper legal remedy in this case.

Lester H. Zimmerman, Jr. (Appellant) appeals from an order of the Court of Common Pleas of Juniata County which dismissed Appellant's exceptions to an order directing Appellant to transfer ownership and control of a bank account to Betty S. Carter, et al.[1] (Appellee) and which dismissed Appellant's counterclaim.

---

[1] Appellees in the instant case are Betty S. Carter, who is the Treasurer of Juniata County, and M. Richard Jones, Ronald Clyde Shearer, and Dorothy E. Delbaugh, who are the Juniata County Commissioners.

On appeal to this Court, Appellant contends that the trial court abused its discretion in issuing a writ of mandamus because Appellees had not established that they possess a clear legal right to control the funds in question. I agree.

Mandamus is an extraordinary remedy which will only issue to compel the performance of a ministerial act or a mandatory duty where the petitioner has a clear legal right, the respondent has a corresponding duty and there is no other appropriate and adequate remedy. *Township of Perkiomen v. Mest*, 92 Pa. Commonwealth Ct. 307, 499 A.2d 706 (1985). The decision whether to issue an order in mandamus is within the discretion of the trial court and this Court's scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Id.*

A thorough review of the record convinces me that Appellees did not establish a clear legal right to the Title IV-D funds which were paid to Appellant. The funds were paid directly to Appellant by DPW pursuant to an Agreement to which the County was not a party. In contradistinction, the County entered into a separate contract for similar funding. Appellant used the funds, in accordance with the provisions of the Agreement, to increase his staff for the investigation and prosecution of paternity and support cases. Appellees now challenge Appellant's actions with respect to the funds on the ground that Appellant is without authority under Sections 1420, 1426, 1440 and 1609 of the County Code[2] to pay the salary of his assistants from funds outside the County fisc.

Unfortunately, this challenge raises more questions than it answers. For example: Are the salary provisions

---

[2] Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §§1420, 1426, 1440, 1609.

of the County Code an absolute limitation on a district attorney's authority to hire and pay assistants? If so, did the prior District Attorney exceed the scope of his authority when he contracted with DPW to receive and utilize Title IV-D funds to increase his staff, or was he acting as an agent of the County? If the execution of the Agreement did exceed the District Attorney's authority, are the funds properly payable by DPW?

These questions are appropriately resolved in an action for a declaratory judgment or by a suit in assumpsit. They are not appropriate in an action for mandamus. The purpose of mandamus is not to establish legal rights, but to enforce those rights already established beyond peradventure. *Hamm v. Board of Education, School District of Philadelphia,* 79 Pa. Commonwealth Ct. 547, 470 A.2d 189 (1984). Because Appellees have failed to establish a clear legal right to receive the Title IV-D funds, the trial court abused its discretion by issuing a writ of mandamus.

Accordingly, the order of the trial court should be reversed.